**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------X
                            :

**ISRAEL RODRIGUEZ,**          :

                            :

                            :       **OPINION AND ORDER**

                            :

                **Plaintiff,**    :       **03 Civ. 5269 (SAS)**

                            :

      **- against -**             :

                            :

**D. MCCLENNING,**        :

                            :

                **Defendant.**    :
-------------------------------------------------X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

# I.    INTRODUCTION

Israel Rodriguez, an inmate at the Green Haven Correctional Facility ("Green Haven") is suing Daniel McClenning, a corrections officer at Green Haven, under section 1983 of Title 42 of the United States Code ("section 1983") for violating his First, Eighth, and Fourteenth Amendment rights. Rodriguez alleges that McClenning sexually assaulted him during a routine pat-frisk in violation of his Eighth Amendment right to be free from cruel and unusual punishment. Rodriguez also alleges that McClenning retaliated against him for filing a grievance regarding the pat-frisk in violation of his First and Fourteenth Amendment rights to petition the government for redress of grievances. McClenning now moves for summary judgment on both claims, arguing that (1)

the sexual assault, even if it occurred, fails to state a claim under section 1983, or, alternatively, qualified immunity protects McClenning from liability, and (2) that Rodriguez has not presented sufficient evidence of McClenning's improper motive to raise a triable issue of fact as to the retaliation claim.

## II.    FACTUAL BACKGROUND

Unless otherwise noted, the facts are drawn from plaintiff's testimony, opposition to the motion, or previously filed grievances.  Because plaintiff's testimony is sufficient to create a genuine issue of material fact, and because I must construe the evidence in the light most favorable to the non-moving party, I shall presume, for this purpose only, that these facts are true.

Israel Rodriguez is an inmate at Green Haven.[1]  Prior to the incidents that led up to this complaint Rodriguez was housed in Green Haven's Honor Block.[2]  On November 10, 2001, at approximately 6 p.m., as Rodriguez waited in line to go out to the yard for evening recreation, he was selected for a pat-frisk.[3]  Officer McClenning told Rodriguez that he was being frisked because McClenning had received information that Rodriguez brought contraband into the yard the

---

[1]    *See* Defendant's Statement Pursuant to S.D.N.Y. Local Rule 56.1 ("Def. 56.1") ¶ 2.

[2]    *See id.* ¶¶ 3, 26-27.

[3]    *See id.* ¶¶ 6-7.

previous day.[4]  McClenning directed Rodriguez to assume a pat-frisk position

against the wall.[5]  After Rodriguez complied with this demand, however,

McClenning put on unauthorized black leather gloves (instead of the latex gloves

usually used for pat-frisks[6]) and started punching his fists together in an

intimidating manner.[7]  McClenning then told Rodriguez to keep his arms and legs

stretched out and if Rodriguez felt "[McClenning's] hands in [Rodriguez's] ass . . .

don't think about screaming because no one is going to help."[8]  McClenning then

---

[4]  *See* Plaintiff's Statement Pursuant to S.D.N.Y. Local Rule 56.1 ("Pl. 56.1") ¶ 2.  Rodriguez's allegations regarding the pat-frisk incident are presented in his papers opposing summary judgment.  *See* Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Pl. Opp.").  Because plaintiff is proceeding pro se, the factual allegations raised in Plaintiff's Opposition to Defendant's Motion to Dismiss will be treated as part of his Complaint.  *See Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987) (considering pro se plaintiff's affidavit in opposition to defendant's motion to dismiss in reviewing district court's dismissal of claim); *Donahue v. United States Dep't of Justice*, 751 F. Supp. 45, 49 (S.D.N.Y. 1990) ("The policy reasons favoring liberal construction of pro se pleadings warrant the Court's consideration of the allegations contained in plaintiffs' memorandum of law, at least where those allegations are consistent with the allegations in the complaint.").  These allegations, however, are disputed by McClenning.  *See* 9/30/04 Declaration of Daniel McClenning ¶¶ 9-10.  These allegations are presumed to be true for purposes of this motion only.

[5]  *See* Def. 56.1 ¶ 8.

[6]  *See* Deposition of Israel Rodriguez ("Rodriguez Dep.") at 56.

[7]  *See* Complaint, Ex. A, Green Haven Correctional Facility Inmate Grievance Complaint Filed by Israel Rodriguez ("11/14/01 Grievance") at 2.

[8]  *Id.*

conducted the pat-frisk in an inappropriate manner that included caressing Rodriguez's chest and repeatedly groping his genitals and buttocks.[9]  Rodriguez told McClenning that the pat-frisk was being conducted in an inappropriate manner and that he would agree to a strip search if McClenning thought that he was hiding contraband.[10]  McClenning responded that he "prefer[red] it this way, it's more fun."[11]  McClenning continued to grope the plaintiff's buttocks.[12]  Again Rodriguez told McClenning that his conduct was unprofessional.[13]  McClenning told the defendant that "we do what we want because we always win," and that Rodriguez should "take his sweet ass out to the yard."[14]  The contact between Rodriguez and McClenning lasted between three and five minutes.[15]

On November 14, 2001, Rodriguez submitted a grievance complaint form regarding the pat-frisk to Green Haven's grievance clerk.[16]  Rodriguez

---

[9]     *See id.*

[10]    *See id.*

[11]    *Id.*

[12]    *See* Rodriguez Dep. at 58-59.

[13]    *See id.* at 59.

[14]    *Id.*

[15]    *See* Def. 56.1 ¶ 9.

[16]    *See id.* ¶ 11.

4

described the pat-frisk in detail on this form.[17]  Rodriguez stated on the form that

the incident made him feel violated, disrespected, and afraid for his personal

safety.[18]  The defendant received a copy of the grievance from his supervisor on

November 21, 2001.[19]  McClenning wrote a response that day to Sergeant

Montegari denying all of the allegations of inappropriate conduct.[20]

On November 23, 2001, two days after McClenning responded to

Rodriguez's allegations, McClenning worked the 3 p.m. to 11 p.m. shift on

Rodriguez's cell block.[21]  At approximately 6 p.m., McClenning notified his

supervisor, Sergeant Greene, about an anonymous note from a confidential

informant that stated, "Check 5-17[Rodriguez's cell number] for Wepons [sic] in

Cell."[22]  McClenning found the note on the officers' desk in the 'Officers' Cage,' a

---

[17]     *See id.*

[18]     *See* 11/14/01 Grievance at 2.  Rodriguez elaborated on his reaction to
the pat-frisk incident in his deposition.  He stated that he spoke with a Green
Haven psychologist on two occasions because of the incident and that he had
trouble eating and sleeping for two to three weeks after the incident.  *See*
Rodriguez Dep. at 84-85, 92.

[19]      *See* Def. 56.1 ¶ 13.

[20]     *See id.* ¶ 14.

[21]     *See id.* ¶ 15.

[22]     *Id.* ¶¶ 17-19.

fenced in area where officers sit when not making rounds on the unit.[23]  Although

McClenning asserts that informants often slip notes between the fencing of the

Officer's Cage,[24] Rodriguez disputes this.[25]  Sergeant Greene authorized a search of

Rodriguez's cell[26] and a strip search of Rodriguez's person[27] because of this note.

No contraband was found during the strip search.[28]  McClenning conducted the cell

search, which lasted approximately forty five minutes.[29]  McClenning reported to

Sgt. Greene that he found and confiscated as contraband two razor blades wrapped

in tissue paper that were attached to a coat hanger, altered headphones, and one

nail that was found stuck in the wall.[30]  Because the search yielded contraband,

McClenning filed a misbehavior report and Rodriguez was placed in keeplock

---

[23]    *See id.* ¶¶ 12, 16-17.

[24]    *See id.*¶ 12.

[25]    *See* Pl. 56.1 ¶ 6.

[26]    *See* Def. 56.1 ¶ 14.

[27]    *See* Pl. Opp., Ex. G, State of New York Department of Correctional
Services Report of Strip Search or Strip Frisk ("11/23/01 Strip Search Report").

[28]    *See id.*

[29]    *See* Def. 56.1 ¶ 21.

[30]    *See id*.

pending the outcome of a misbehavior hearing.[31]

The misbehavior hearing before Hearing Officer S. Kaplan began on November 29, 2001, and concluded on December 6, 2001.[32]  Hearing Officer Kaplan dismissed the charges of contraband possession (the altered headphones) and weapons possession (the razor blades)[33] because "in this hearing officer's opinion the credibility of the conf[idential] inf[ormant] could not be established and therefore it could not be established that the razor blades were not placed in the inmate's cell by another inmate."[34]  Rodriguez pled guilty to having the nail in his cell wall.[35]  However, Rodriguez explained in his opposition to the summary judgment motion that he pled guilty because the nail was in the cell when he first arrived, and every cell in the Honor Block contained similar nails to hold up mirrors over the sinks.[36]  Hearing Officer Kaplan also noted that she "did not feel

_____

[31]     *See id.* ¶¶ 21-22

[32]     *See id.* ¶ 24.

[33]     *See id.* ¶ 25.

[34]     Pl. Opp., Ex. L, State of New York Department of Correctional Services Superintendent Hearing Disposition, December 6, 2001 ("12/6/01 Superintendent Hearing Disposition").

[35]      *See* Def. 56.1 ¶ 25.

[36]     *See* Pl. Opp. at 6-7.

7

that the nail was in the inmate's possession to use as a weapon based upon C.O. McClenning's testimony as to how/where it was found."[37]  However, because he pled guilty to possessing the nail, Rodriguez was sentenced to time served in keeplock.[38]  This guilty plea also resulted in

Rodriguez's removal from Honor Block to a much more restricted cell block.[39]

Rodriguez immediately appealed his guilty plea and the hearing officer's disposition.[40]  First Deputy Superintendent Richards reversed Hearing Officer Kaplan's disposition without opinion and expunged the guilty plea from Rodriguez's prison record, after which Rodriguez was reinstated to Honor Block housing.[41]  Because of Hearing Officer Kaplan's disposition and the guilty plea, Rodriguez spent eight weeks in housing other than Honor Block.[42]

## III.    LEGAL STANDARD

### A.    Summary Judgment

---

[37]    12/6/01 Superintendent Hearing Disposition.

[38]    *See* Def. 56.1 ¶ 25.

[39]    *See id.* ¶ 26.

[40]    *See id.*

[41]    *See id.* ¶ 27.

[42]    *See* Rodriguez Dep. at 119.

Summary judgment is appropriate if the evidence of record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[43] "An issue of fact is genuine 'if the evidence is such that a jury could return a verdict for the nonmoving party.'"[44] "A fact is material for these purposes if it 'might affect the outcome of the suit under the governing law.'"[45]

The movant has the burden of demonstrating that no genuine issue of material fact exists.[46] In turn, to defeat a motion for summary judgment, the non-moving party must raise a genuine issue of material fact. To do so, it "must do more than simply show that there is some metaphysical doubt as to the material facts,"[47] and it must "come forward with 'specific facts showing that there is a

---

[43]     Fed. R. Civ. P. 56(c).

[44]     *Overton v. New York State Div. Of Military and Naval Affairs*, 373 F.3d 83, 89 (2d Cir. 2004) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)).

[45]     *Id.* (quoting *Anderson*, 477 U.S. at 248).

[46]     *See Powell v. National Bd. of Med. Exam'rs*, 364 F.3d 79, 84 (2d Cir. 2004).

[47]     *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

genuine issue for trial.'"[48]  In determining whether a genuine issue of material fact

exists, the court must construe the evidence in the light most favorable to the non-

moving party and draw all inferences in that party's favor.[49]

Because Rodriguez is proceeding pro se, his pleadings must be

considered under a more lenient standard than that accorded to "formal pleadings

drafted by lawyers,"[50] and his pleadings must be "interpret[ed] . . . to raise the

strongest arguments they suggest."[51]  However, a pro se plaintiff must still meet the

usual requirements of summary judgment;[52] a pro se party's "failure to allege either

specific facts or particular laws that have been violated renders his attempt to

---

[48]	*Powell*, 364 F.3d at 84 (quoting *Aslanidis v. United States Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993)).

[49]	*See Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004).

[50]	*Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam).  *Accord Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).

[51]	*Burgos*, 14 F.3d at 790.

[52]	*See Maalouf v. Salomon Smith Barney, Inc.*, No. 02 Civ. 4470, 2004 WL 2008848, at *4 (S.D.N.Y. Sept. 8, 2004) ("'Proceeding pro se does not otherwise relieve a litigant from the usual requirements of summary judgment, and a pro se party's 'bald assertion,' unsupported by evidence, is not sufficient to overcome a motion for summary judgment.'") (quoting *Cole v. Artuz*, No. 93 Civ. 5981, 1999 WL 983876, at *3 (S.D.N.Y. Oct. 28, 1999)).

oppose defendants' motion [for summary judgment] ineffectual."[53]

## B.    Eighth Amendment

The Supreme Court's Eighth Amendment decisions recognize that the definition of cruel and unusual punishment changes as social values change over time.[54]  The Eighth Amendment "draw[s] its meaning from the evolving standards of decency that mark the progress of a maturing society."[55]  Although the Court read the Eighth Amendment narrowly in early cases,[56] the Amendment now prohibits punishments that are "'inconsistent with contemporary standards of decency' and 'repugnant to the conscience of mankind.'"[57]  An Eighth Amendment claim must be examined in the context of society's current expectations regarding cruel and unusual punishment since "the objective component of an Eighth

---

[53]    *Kadosh v. TRW*, No. 91 Civ. 5080, 1994 WL 681763, at *5 (S.D.N.Y. Dec. 5, 1994).

[54]    *See Rhodes v. Chapman*, 452 U.S. 337, 345 (1981) ("The Court has interpreted the[] words [cruel and unusual punishment] in a flexible and dynamic manner . . . and has extended the Amendment's reach beyond the barbarous physical punishments at issue in the Court's earliest cases." (internal quotation marks omitted)).

[55]    *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (quoting *Rhodes*, 425 U.S. at 346).

[56]    *Rhodes*, 452 U.S. at 345.

[57]    *Whitley v. Albers*, 475 U.S. 312, 327 (1986) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).

Amendment claim is . . . responsive to contemporary standards of decency."[58]

Because courts must assess Eighth Amendment claims in light of contemporary standards of decency and societal expectations, "such judgment[s] should be informed by objective factors to the maximum possible extent."[59] Although "the Constitution contemplates that in the end [a court's] own judgment will be brought to bear on the question of the acceptability of a given punishment,"[60] Eighth Amendment judgments "should neither be nor appear to be merely the subjective views of judges."[61] Instead, courts should consider "the public attitude toward a given sanction"[62] to identify the contemporary standards of decency that govern Eighth Amendment claims.

## C.    Qualified Immunity

Qualified immunity protects state officials from civil liability for "actions performed in the course of their duties if 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person

---

[58]      *Hudson*, 503 U.S. at 8.

[59]      *Rhodes*, 452 U.S. at 346 (quotation marks and citation omitted).

[60]      *Id.* (quotation marks and citation omitted).

[61]      *Id.* (quotation marks and citation omitted).

[62]      *Id.* at 348 n.13.

would have known.'"[63]  This doctrine balances "the need . . . to hold responsible

public officials exercising their power in a wholly unjustified manner and . . . [the

need] to shield officials responsibly attempting to perform their public duties in

good faith from having to explain their actions to the satisfaction of a jury."[64]

Because qualified immunity is "an immunity from suit rather than a mere defense

to liability"[65] a defendant entitled to qualified immunity must be granted summary

judgment.[66]

### D.     Retaliation Claim

The First and Fourteenth Amendments protect prison inmates who file

a grievance from retaliation by prison officials, and such retaliation is actionable

under section 1983.[67]  To prevail on a retaliation claim, an inmate must show first

---

[63]     *Luna v. Pico*, 356 F.3d 481, 490 (2d Cir. 2004) (quoting *Wilson v. Layne*, 526 U.S. 603, 614 (1999)).

[64]     *Locurto v. Safir*, 264 F.3d 154, 162-63 (2d Cir. 2001).

[65]     *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001) (quotation marks, citation, and emphasis omitted).

[66]     *See id.* at 200 ("Qualified immunity is an entitlement not to stand trial or face the other burdens of litigation. . . .  As a result, we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation.") (citations omitted).

[67]     *See Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996) ("The right to petition government for redress of grievances — in both judicial and administrative forums — is 'among the most precious of the liberties safeguarded

13

that he engaged in constitutionally protected conduct, and second, that this protected conduct "was a substantial or motivating factor for the adverse actions taken by prison officials."[68] Although courts must assess prisoner retaliation claims with "particular care"[69] because these claims can be "'prone to abuse,'"[70] circumstantial evidence alone can be sufficient to meet this burden of proof.[71] However, even if an inmate meets this burden, a prison official can still prevail on summary judgment if the official can show that the inmate would have received the same punishment absent any improper motivation.[72]

## IV. DISCUSSION

### A. Eighth Amendment Sexual Assault Claim

---

by the Bill of Rights.'") (quoting *United Mine Workers v. Illinois State Bar Ass'n*, 389 U.S. 217, 222 (1967)) (emphasis omitted).

[68] *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003).

[69] *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1996).

[70] *Graham*, 89 F.3d at 79 (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)).

[71] *See Bennett*, 343 F.3d at 139 ("where . . . circumstantial evidence of a retaliatory motive is sufficiently compelling, direct evidence is not invariably required"); *Gayle v. Gonyea,* 313 F.3d 677, 684 (2d Cir. 2002) ("circumstantial evidence may be . . . sufficient to raise a genuine issue of material fact [as to a prison official's retaliatory motives] to preclude a grant of summary judgment").

[72] *See Gayle*, 313 F.3d at 680.

Rodriguez alleges that McClenning violated his Eighth Amendment rights against cruel and unusual punishment by sexually assaulting him during a pat-frisk. McClenning argues that the sexual contact alleged by Rodriguez, even if it occurred, does not constitute an Eighth Amendment violation. Alternatively, McClenning asserts that qualified immunity protects him from liability. For the reasons set forth below, McClenning's motion for summary judgment on the sexual assault claim is denied.

## 1. Constitutional Claim: Is the Sexual Assault of a Prison Inmate an Eighth Amendment Violation?

Assessing whether McClenning's actions violated Rodriguez's Eighth Amendment rights requires examining contemporary standards of decency.[73] Courts must conduct a two-step inquiry to identify contemporary standards of decency. *First*, the court must review "objective indicia of consensus, as expressed in particular by the enactments of legislatures that have addressed the question . . . for essential instruction."[74] *Second*, the court "must determine, in the exercise of [its] own independent judgement"[75] whether the punishment is cruel and unusual.

---

[73]     *Hudson*, 503 U.S. at 8.

[74]     *Roper v. Simmons*, — U.S. —, No. 03-633, 2005 WL 464890 (Mar. 1, 2005) (no page numbers available) (citation omitted).

[75]     *Id.* (no page numbers available) (citation omitted).

Eight years ago, in *Boddie v. Schneider*,[76] the Second Circuit addressed whether the sexual assault of a prison inmate by a corrections officer violates the Eighth Amendment. Noting that "[this type of] sexual abuse may violate contemporary standards of decency," the *Boddie* court found that sexual abuse serves no legitimate law enforcement or penological purpose.[77] Because of this, the court held that "there can be no doubt that severe or repetitive sexual abuse of an inmate by a prison officer . . . constitute[s] an Eighth Amendment violation."[78] However, the court also determined that the sexual assault of a prison inmate by a corrections officer does not always violate the Eighth Amendment. The court dismissed the plaintiff's complaint as insufficiently serious,[79] implying that the degree of abuse alleged by the plaintiff would not give rise to a

---

[76]     105 F.3d 857 (2d Cir. 1997).

[77]     *Id.* at 861 ("[S]exual abuse of a prisoner by a corrections officer has no legitimate penological purpose, and is "simply not part of the penalty that criminal offenders pay for their offenses against society."") (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

[78]     *Id.* (quotation marks and citation omitted).

[79]     *Id*. ("No single incident that [Boddie] described was severe enough to be 'objectively, sufficiently serious.'. . . The isolated episodes of harassment and touching alleged by Boddie are despicable and, if true, they may potentially be the basis of state tort actions. But they do not involve a harm of federal constitutional proportions.").

constitutional claim.[80]

Here, Rodriguez's allegations of sexual assault are similar to the plaintiff's allegations in *Boddie*. However, since Eighth Amendment violations must be examined in light of contemporary standards of decency, this Court must determine whether societal expectations and standards regarding the sexual assault of prison inmates has changed in the eight years since *Boddie*.

There is no bright line test that identifies contemporary standards of decency.[81] However, consistent changes in states' laws to outlaw a practice,[82] coupled with a high number of states that prohibit the practice, provide strong

---

[80] The plaintiff in *Boddie* alleged that Corrections Officer Schneider made a pass at him on one occasion; the next day she squeezed his hand, touched his genitals, and said, "You know your [sic] sexy black devil, I like you"; and two weeks later she ordered him to take off his sweatshirt and then pushed herself up against him in the hallway, "bumping into [his] chest with both her breast [sic] so hard [he] could feel the points of her nipples against [his] chest, and, when the plaintiff tried to pass Schneider in the hallway, she pinned him to the wall "with her whole body vagina against penis pinning [him] to the door." *Id.* at 859.

[81] *See Roper*, 2005 WL 464890 (no page numbers available) (holding that a variety of objective indicia, including "the rejection of the juvenile death penalty in the majority of States; the infrequency of its use even where it remains on the books; and the consistency in the trend towards abolition of the practice" established a national consensus against the juvenile death penalty).

[82] *See id.* (holding that "it is not so much the number of these States that is significant, but the consistency of the direction of change" that demonstrates evolving social standards and national consensus).

evidence of a national consensus against the practice as cruel and unusual.[83]

Developments in states' laws since *Boddie* indicate that contemporary standards of

decency have evolved to condemn the sexual assault of prison inmates by prison

employees. In 1998, one year after the *Boddie* decision, only fifteen states did not

prohibit sexual contact between prison employees and inmates.[84] Since 1998,

however, eleven of these fifteen states outlawed such contact.[85] Now, only four

states fail to outlaw such behavior.[86] The "consistency of the direction of

---

[83]     *See id*.

[84]     *See* Amnesty International, Not Part of My Sentence: Violations of the
Human Rights of Women in Custody, 18, 19 (Mar. 1, 1999) (citing B. Smith,
National Women's Law Center, Fifty-State Survey of Criminal Law Prohibiting
Sexual Abuse of Prisoners (1998)). These states were Alabama, Kentucky,
Maryland, Massachusetts, Minnesota, Montana, Nebraska, Oregon, Tennessee,
Utah, Vermont, Virginia, Washington, West Virginia, and Wisconsin. *See id.*

[85]     Kentucky, Maryland, Massachusetts, Minnesota, Montana, Nebraska,
Tennessee, Utah, Virginia, Washington, and West Virginia have now outlawed all
sexual contact between inmates and prison employees. *See* Ky. Rev. Stat. Ann §
510.120 (Banks-Baldwin 2002); Mass. Gen. Laws ch. 268 § 21A (1999); Minn.
Stat. § 609.344m (2001); Mont. Code Ann. §§ 45-5-502, 503 (1999); Neb. Rev.
Stat. §§ 28-322.02, 03 (1999); S.D. Codified Laws §§ 22-22-7.6, 24-1-26.1
(Michie 2000); Utah Code Ann. § 76-5-412 (2001); Va. Code Ann. §§ 18.2-64.2,
67 (Michie 1999); Wash. Rev. Code §§ 72.09.630 (1999). Maryland and West
Virginia outlawed any act of sexual penetration but do not specifically prohibit all
sexual contact between inmates and prison employees. *See* Md. Code Ann.,
Criminal Law § 3-314 (2002); W.Va. Code § 61-8B-10 (2000).

[86]     Vermont, Alabama, Oregon, and Wisconsin still do not prohibit
sexual contact between inmates and prison employees. Wisconsin prohibits the
"abuse" of incarcerated persons, but there is no specific prohibition against sexual

change"[87] to states' laws, as well as the overwhelming number of states that now prohibit this conduct, demonstrate a national consensus that any sexual assault of a prisoner by a prison employee constitutes cruel and unusual punishment. Given these societal standards, McClenning's alleged conduct violated Rodriguez's Eighth Amendment rights.

### 2.    Qualified Immunity

The qualified immunity doctrine exists to ensure that government officials can carry out their duties "in ways they reasonably believe to be lawful" without fear of civil liability.[88] However, while this doctrine "gives ample room for mistaken judgments,"[89] it does not protect "the plainly incompetent or those who knowingly violate the law."[90]

Here, qualified immunity does not protect McClenning because the sexual assault of a prison inmate is outside the scope of a corrections officer's official duties. *Boddie* established that the sexual assault of a prison inmate by a

---

assault or abuse. *See* Wis. Stat. § 940.29 (2004).

[87]    *Roper*, 2005 WL 464890 (no page numbers available).

[88]    *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

[89]    *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quotation marks and citation omitted).

[90]    *Id.* (quotation marks and citation omitted).

prison employee serves no legitimate punitive purpose.[91]  New York State law

criminalizes *any* sexual contact initiated by a prison employee against an inmate.[92]

A corrections officer who sexually assaults a prison inmate does not mistakenly

judge how he should carry out his duties; instead, such conduct blatantly disregards

a New York State criminal statute and Second Circuit case law.  If true,

McClenning's alleged comments "don't even think about screaming because no

one is going to help"[93] and "we do what we want because we always win"[94]

indicate that, instead of performing the pat-frisk in a manner he reasonably

believed to be lawful, McClenning knowingly acted outside the scope of his duties

to abuse his power over Rodriguez.

In sum, both of McClenning's arguments for summary judgment on

the sexual assault claim fail.  If McClenning engaged in the alleged sexual assault,

that conduct would constitute an Eighth Amendment violation because such

---

[91]     *See Boddie*, 105 F.3d at 861.

[92]     *See* N.Y. Penal Law § 130.05 (McKinney 2004).  The New York State legislature enacted this law in 1996, five years before the alleged sexual assault in this case. 1996 N.Y. Laws 266A. 8592-A (record of enactment).  This law did not exist at the time of the alleged sexual assaults in *Boddie*, indicating that corrections officers were since put on notice that sexual contact with inmates is unacceptable and can result in a criminal prosecution.

[93]     11/14/01 Grievance at 2.

[94]     Rodriguez Dep. at 59.

behavior violates contemporary standards of decency.  Qualified immunity cannot protect McClenning as the sexual assault of a prison inmate falls outside the scope of a corrections officer's official duties.  McClenning's motion for summary judgment on the sexual assault claim is denied because McClenning is not entitled to qualified immunity if he intentionally engaged in unlawful conduct.[95]

## B.    Retaliation Claim

Rodriguez also alleges that McClenning retaliated against him for filing a grievance regarding the pat-frisk, in violation of his First and Fourteenth Amendment rights to petition the government for redress of grievances.  Rodriguez claims that McClenning conducted a retaliatory cell search, possibly planted contraband in his cell, and pursued a retaliatory misbehavior report against him.[96] McClenning argues that Rodriguez has no constitutional right to be free from retaliatory cell searches.[97]  McClenning also claims that Rodriguez cannot prove

---

[95]    In his motion for summary judgment, McClenning argued that he is entitled to summary judgment on the basis of qualified immunity because sexual assault is not a clearly established Eighth Amendment violation.  Since qualified immunity does not apply to McClenning's alleged acts, the question of whether the sexual assault of a prison inmate is a clearly established Eighth Amendment violation need not be addressed.

[96]    *See* Compl. at 5-8.

[97]    *See* Memorandum of Law in Support of Defendant's Motion for Summary Judgment ("Def. Mem.") at 15-16.

any retaliatory motive for the misbehavior report and asserts that Rodriguez would have received the same treatment absent any retaliatory motive.[98]  For the reasons set forth below, McClenning's motion for summary judgment on the retaliation claim is denied.

The First and Fourteenth Amendments prohibit prison officials from retaliating against inmates who file grievances.[99]  However, because inmates have no reasonable expectation of privacy in their prison cells,[100] McClenning correctly asserts that Rodriguez had no constitutional right to be free from cell searches of any kind, including retaliatory cell searches.[101]

---

[98]     *See id*. at 16-21.

[99]     *See Graham*, 89 F.3d at 80.

[100]    *See Hudson v. Palmer*, 468 U.S. 517, 525-26 (1984) ("[The] Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell.  The recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions.").  *See also Willis v. Artuz*, 301 F.3d 65, 66 (2d Cir. 2002) (prisoners have no expectation of privacy in their prison cells).

[101]    *See Salahuddin v. Mead*, No. 95 Civ. 8581, 2002 WL 1968329, at *5 (S.D.N.Y. Aug. 26, 2002) ("a cell search is different from the various administrative decisions that are actionable under [section]1983 if they are retaliatory"); *Walker v. Keyser*, No. 98 Civ. 5217, 2001 WL 1160588, at *9 (S.D.N.Y. Oct. 2, 2001) ("even retaliatory cell searches are not actionable under § 1983"); *Bey v. Eggleton*, No. 96 Civ. 3302, 1998 WL 118158, at *4 (S.D.N.Y. Mar. 17, 1998) ("an inmate has no constitutional right to be free from a search of his cell, even when that search is conducted for arbitrary or retaliatory motives");

At the same time, Rodriguez can assert a retaliation claim for McClenning's conduct in conjunction with the cell search—the alleged retaliatory planting of evidence and retaliatory misbehavior report.[102]  To prevail on this claim, Rodriguez must show first that he engaged in constitutionally protected conduct, and second, that this protected conduct "was a substantial or motivating factor for the adverse actions taken by prison officials."[103]

Rodriguez has satisfied both requirements.  Because "[p]risoners . . . have a constitutional right of access to the courts and to petition the government for redress of grievances,"[104] Rodriguez satisfied the first requirement by filing the

---

*Gadson v. Goord*, No. 96 Civ. 7544, 1997 WL 714878, at *7 (S.D.N.Y. Nov. 17, 1997) ("Searches of cells implicate no protected constitutional rights, even if the search is arbitrary or retaliatory in nature."); *Higgins v. Artuz*, No. 94 Civ. 4810, 1997 WL 466505, at *4 (S.D.N.Y. Aug. 14, 1997) (same).

[102]    *See Colon*, 58 F.3d at 872 ("Prisoners, like non-prisoners, have a constitutional right of access to the courts and to petition the government for the redress of grievances, and prison officials may not retaliate against prisoners for the exercise of that right.").

[103]    *Bennett*, 343 F.3d at 137.  The Second Circuit recently held that the filing of false misbehavior reports and transferring an inmate to keeplock housing constitutes adverse action by prison officials for the purposes of a section 1983 retaliation complaint, whether or not this deters the inmate from filing further grievances.  *See Gill v. Pidlypchak*, 389 F.3d 379, 384 (2d Cir. 2004).  That holding makes clear that McClenning's alleged conduct constituted adverse actions against Rodriguez.

[104]    *Colon*, 58 F.3d at 872.  *Accord Gayle*, 313 F.3d at 682.

grievance regarding the pat-frisk. Rodriguez also met the second requirement by providing circumstantial evidence that raises a genuine issue of material fact regarding McClenning's retaliatory motives.[105] The temporal proximity between an inmate's grievance and alleged retaliation by prison officials is circumstantial evidence of retaliation.[106] Proof of prior good behavior by the inmate[107] and vindication in a disciplinary proceeding arising from the alleged retaliation[108] provide further evidence of retaliation. Here, the alleged retaliation occurred only two days after McClenning responded in writing to Rodriguez's grievance.[109] Further, Rodriguez's placement in Honor Block housing and Hearing Officer Kaplan's disposition report noting that "[i]nmate is an honor block inmate with a positive program record"[110] indicate Rodriguez's generally good disciplinary

---

[105]    *See Bennett*, 343 F.3d at 139 ("where . . . circumstantial evidence of a retaliatory motive is sufficiently compelling, direct evidence is not invariably required"); *Gayle,* 313 F.3d at 684 ("circumstantial evidence may be . . . sufficient to raise a genuine issue of material fact [as to a prison official's retaliatory motives] to preclude a grant of summary judgment").

[106]    *See Gayle*, 313 F.3d at 683.

[107]    *See Colon*, 58 F.3d at 872.

[108]    *See Gayle*, 313 F.3d at 683.

[109]    *See* Def. Mem. at 4.

[110]    Pl. Opp., Ex. L, New York State Department of Correctional Services, Green Haven General Hearing Record Sheet ("12/6/01 General Hearing Record

record at Green Haven. Finally, Hearing Officer Kaplan dismissed the weapons

charges against Rodriguez for lack of sufficient evidence,[111] and the charge to

which Rodriguez pled guilty (possessing the nail) was reversed and expunged from

his prison record by First Deputy Superintendent Richards.[112] Although Richards

did not explain the reasons for this reversal, Hearing Officer Kaplan noted in her

disposition that she "did not feel that the nail was in the inmate's possession to use

as a weapon based on . . . McClenning's testimony as to how/where it was

found."[113] Rodriguez also explained that all Honor Block cells used identical nails

to hang mirrors.[114] Taken together, this circumstantial evidence creates a genuine

issue of material fact as to whether retaliation substantially motivated

McClenning's issuance of the misbehavior report.

Even though Rodriguez met this burden, McClenning could still

prevail on summary judgment if he could show that Rodriguez would have

---

Sheet") at 2.

[111]     *See id.*

[112]     *See* Pl. Opp. Ex. N, Letter from P. Richards, First Deputy
Superintendent Green Haven Correctional Facility, to Israel Rodriguez, December
14, 2001.

[113]     12/6/01 General Hearing Record Sheet at 2.

[114]     *See* Compl. at 6-7.

received the same punishment absent any improper motivation.[115]  However, McClenning failed to meet this burden.  McClenning argues that even if he did plant the razor blades in Rodriguez's cell or file the misbehavior report in retaliation for the pat-frisk grievance, Rodriguez suffered no injury from either act.[116]  Instead, McClenning insists, Rodriguez was placed in keeplock and removed from Honor Block housing because he pled guilty to possessing the nail found in his cell.[117]  While this may technically be true, Rodriguez's guilty plea directly resulted from the misbehavior report in which McClenning cited the nail as contraband within Rodriguez's possession.  From the evidence in the record — Hearing Officer Kaplan's disposition, Rodriguez's sworn statements, and the reversal of the guilty plea — it is unclear that the nail was contraband at all, or that it would have been included in a non-retaliatory misbehavior report.  Still, because of the nail's inclusion in the misbehavior report, Rodriguez spent eight weeks in housing far less desirable than Honor Block.[118]  Because Rodriguez has raised a genuine issue of material fact as to McClenning's retaliatory motive for issuing the

---

[115]    *See Gayle*, 313 F.3d at 680.

[116]    *See* Def. Mem. at 17-18.

[117]    *See id.*

[118]    *See* Rodriguez Dep. at 119.

26

misbehavior report, and because McClenning did not produce evidence showing that Rodriguez would have received the exact same punishment absent any retaliatory motive, McClenning's motion for summary judgment on the retaliation claim is denied.

## V.   CONCLUSION

For the reasons set forth above, McClenning's motion for summary judgment is denied in its entirety. The Clerk is directed to close this motion [# 26 on the docket]. A conference is scheduled for May 13, 2005, at 4:30 pm.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:       New York, New York
             April 21, 2005

28

**Plaintiff Pro Se:**

Israel Rodriguez 7L 91-A 5292
Green Haven Correctional Facility
P.O. Box 4000
Stormville, New York 12582

**For Defendant:**

Gabriel Hertzberg
Assistant Attorney General of the State of New York
120 Broadway, 24th Floor
New York, New York 10271
(212) 416-8118